May it please the Court, Edward Himmelfarb with the Department of Justice, representing the Director of the Bureau of Prisons and the Warden and Associate Warden of the Metropolitan Correctional Center in San Diego. This case is a combined Bivens and Federal Tort Claims Act case in which the plaintiff, a pre-trial detainee at the MCC in San Diego, alleges that he was raped by his cellmate. We don't have a Federal Tort Claim Act before us, do we? It's all Bivens. That's not on appeal. But that would be, we're going to be asking the Court to remand to the District Court after ordering dismissal of our appellants to remand the entire case to the District Court to proceed on the FTCA claim. Right. That's correct. It's not on appeal, Your Honor. Just to clarify in that regard, then, so to the extent that there was some, there is some legitimate civil rights complaint here or civil complaint, that's how it would be allowed to proceed? It would proceed as an FTCA claim, Your Honor. That doesn't mean we don't have defenses. I understand. But, yes, sir. But the question is whether... That's the way it would proceed. That's correct. Okay. That's correct. So, he blames, the plaintiff blames the warden and associate warden for his cell placement. Now, he doesn't challenge any prison policy. His claim is simply that the decision to house him with Harold Ford, the other inmate who allegedly raped him, was a violation of his constitutional rights. The complaint offers no factual allegations that in any way tie the warden and associate There's nothing... That's not something that two very high-level supervisory officials at the institution would be involved in at all. Let me ask you this, Mr. Hemelfarb. The plaintiff, in a complaint which goes beyond just stating facts, mentions several authorities, several cases. One of them is being the Redmond case. Correct. Now, why isn't this the same as Redmond? Well, Redmond involved a policy at the institution there, aside from the fact that it was a fully tried case. We'll leave that. I don't think that's that relevant. But it involved a policy at the prison, and the policy was that their decision was to take the aggressive homosexual prisoners and to take them away from the... They had originally segregated them, and then they decided to move them in to the general population of heterosexual inmates on the theory that they could defend themselves. And basically, the idea was, as one of the officials in that case testified, we put them there in the hope that nothing would happen. Now, that's an entirely different case. The important thing to remember in this case is that there's no challenge to any policy at the MCC in San Diego. The word policy is mentioned exactly once in the complaint. It refers to a policy of the state courts in California about prison rape. It's in the introductory allegations to the complaint. It has nothing to do with MCC San Diego. So Redmond is a very different kind of case where the warden might be responsible for that policy. What kind of factual allegations do you think are missing in this case? Well, there's some factual connection between the placement of the inmate, Harold Ford, in the plaintiff's cell, and the warden himself. Either there would have to be some kind of policy that was wrong, constitutionally wrong, and that the warden was responsible for, or somehow the warden had to be involved in the decision. This is a day-to-day decision that there's thousands of these cell placements every year, and they're made at a relatively low level at the prison. What if there was a pattern of assaults in cells that had these placements of a violent and a nonviolent prisoner together? If there was a repeated problem every day, someone was being raped in this type of situation, could that be a factual pattern that would create an obligation? In the absence of a policy, just factually like that. I think the classic example of that is, of course, Decision Start is BACA. You have an extreme situation there. It's sort of horrifying what's going on in the jail in that case, in an extreme situation in which the warden is actively involved, in that case with the sheriff, but where the head of the prison is actively involved and is being briefed constantly on these. In that case, yes, conceivably that could be enough, but there's nothing even resembling that in this case. Right, but the issue or the problem, and that's why I was asking about the Federal Tort Claims STAR versus BACA came about because your department, the Department of Justice, is the one that did an outside investigation. You helped government, federal government, help create the record that made it possible in that case for there to be the kind of specific allegations. That took a long time to develop that case. Here you have an individual. He's put in a place where he's a pretrial detainee. He's put in a cell and raped, assuming that's all true. That's an individual case. Now, how is an individual supposed to have enough information to plea the specificity that you say needs to be added to or should have been in this complaint? The District Judge Hoff said, and this is talked about in STAR, I realize, said, look, this is a plausible claim, and if the government has defenses, then move for summary judgment after the record has been developed. What's a prisoner supposed to do as an individual to know exactly what the warden did other than he's the guy in charge and the deputy warden is the guy in charge? How do we balance that in terms of the mandate of STAR? We understand that, and Iqbal, which is the higher authority, but that's the dilemma and that's exactly what seemed to trouble the District Court here. I think, Your Honor, I don't want to say you shouldn't be troubled at all by a case that involves a prison rape. What I'm saying is that in order to charge the warden, who is at this level, with something that may have been done at this level, you need something more than just saying the warden is responsible for everything in the prison. Now, he's responsible in the same sense the Attorney General is responsible for what I'm saying. It's the same kind of situation. He will. It's on tape. Well, perhaps, Your Honor, I'm not sure. There are several levels at this institution between the warden and the relatively low-level official who makes these decisions on a day-to-day basis. That's what drove Iqbal. Yes, that's correct. I mean, it was the Attorney General. Quite honestly, Your Honor, if you look at Iqbal, the allegations that the Attorney General and the head of the FBI were involved were much stronger than the allegations in this case that the warden was involved. That was the kind of policy you might think. You're begging my question. My question is, okay, we've got the mandates. Here you have an individual. How do you expect, what is the judicial process that allows an individual who's put in this high-risk situation by the guy down here who is hired and employed or supervised by the guy at the top who's responsible for the operation, how do you expect the prisoner to have enough information to provide all the linkage that you're talking about? Where would he get that information to make the allegations that you say should have been in this complaint? Well, I don't think they should have been in this complaint because they're not factually correct. But the way to look at this, I think there are two separate parts of here. This is the first step in qualified immunity, whether the state's a claim. The first question of that, part A of that is, under Iqbal, has it been pleaded properly? If it's been pleaded properly, then you're still a question of does that constitute deliberate indifference? Is it a constitutional violation? Now, we're talking about the first part A. That's right. And in that case, for the warden, there's not going to be. What the plaintiff is going to do in a case like this is the plaintiff is going to sue the person who made the decision. How does he know who made the decision? He's going to have to find that out. How? Without discovery. Without discovery, in order to file a complaint, this is a problem for plaintiff lawyers all around. Rule 11 says you have to have the basis. For the government counsel, this is not a private lawsuit. This is the government who has incarcerated him in a dissension facility the government maintains. He has not been tried or convicted of everything, and he's been put in a cell under your custody, and he's been raped. Yes. Okay? Yes, Your Honor. I understand all of that. But what I would suggest is that what needs to be done at this level now is to look at whether the current complaint will get to, you know, if I have time, I'll get to what will happen in a future case. The current complaint, these individuals who are defendants, there's no basis for holding them here. What the court should do, in our view, is to send it back to the district court with directions to dismiss these particular defendants against whom there are no valid allegations. Why not send it back with leave to amend? Well, that's sort of implicit. I think that's really a question for the district court to decide. Okay. If he comes to the district judge and says, here, I'd like to amend the complaint, here's my basis for amending the complaint, that's a totally different story. He can proceed on that if the court allows it, because it's a matter of... So can he just go back and amend and plead does, and then get discovery, and then figure out who the proper people are? I'm not sure you can plead a complaint that has only does. Now, it may be different. This is something that, again, will have to be addressed in the district court. I'm not sure. Maybe the fact that the U.S. is involved in a different claim might get you past it. I think if you show up with a solely a Bivens claim that's all does, I'm not sure that you can get past, because you don't have anybody to serve. What if he gets discovery in the FTC? He's going to get discovery. Okay. And then he finds that there is, in fact, information to link these people. Then perhaps in that situation, yes, he can go to the district judge and say, here is the information. I found discovery, and here's my proposal to amend my Bivens complaint. Now, you know, just to... He hasn't got a Bivens complaint under your theory, because he's trying to do a dismissal. No. At the moment, no. At the moment, no. And I'm not suggesting he should go back. I don't want to advise him to go back and do that. Seriously. But... But if he got discovery and found out that there was a link to the word... If he said, here's the individual, I know who the individual is. This individual did this. We would not be here saying this is an Iqbal case. We would be here on the second part of the first half of Qualified Immunity. We would be saying that what that person did was not deliberate indifference. It was no constitutional violation. So there are really those two aspects. But much of this is going to have to be done back in district court. He can go ahead with the case. Again, I just want to be clear, we're not saying we're not going to raise defenses in the FTCA claim. We have defenses on the FTCA claim. And then, of course, there's the judgment bar, but that's all far ahead. For now, the key thing for this court to consider is sending the case back to district court with directions to dismiss the warden, the associate warden, and actually the director of Bureau of Prisons was admittedly not a defendant. The district court made a mistake in saying he was a defendant on the Bivens claim. So he should be... At a minimum, that should be clarified, that he's not a defendant. But you're not saying dismiss with prejudice?  No. All right. Thank you very much, Mr. Chairman. Thank you, Mr. Farb. Mr. McBride. Good morning, Your Honors. May it please the court, Brody McBride on behalf of Appellee and Plaintiff in this case. Your Honor, this case really comes down to two issues, and I think the court was mindful of the first. The government in this case, I think a decision like this has to be placed in context. MG, Appellee in this case, has done all that can reasonably be expected of an individual in his situation. Given his circumstances, there is no Department of Justice investigation like there was in Starr or like what's going on in Albuquerque right now to develop the record at this stage. Really this is all he can do. Why can't he ask for permission of the court to take early discovery, take the depositions of these two named defendants and ask them under oath whether they had anything to do with the placement of Ford in his cell? Your Honor, I'm not aware. I obviously haven't been practicing as long as some of the other attorneys in this district, but I'm not aware of such a procedure. If that were available and the district court were willing to grant that? We allow early discovery in 12B1 cases. This isn't a 12B1 case. It's a 12B6 case. We allow it all the time in 12B1 cases for purposes of establishing jurisdiction. If you make a motion and show good cause for early discovery to determine just who it was who ordered Ford and MG to be in the same cell, you might find that the district court is amenable to that. I appreciate that suggestion, Your Honor. If that were something that were granted, I think that would be a good... In the old days before discovery became so popular and so broad, this type of thing was done by investigation. You'd get an investigator to go out and talk to the people of the prison. Maybe when they're off duty and find out who makes these decisions. Then you could say in your allegations, it was A, B, and C who made the decision to put Ford in the cell. You don't say that in any case. You cite Redmond, but in Redmond there were reports that the defendants had read regarding the aggressive homosexuals being put in the cells. There was actually allegations of knowledge that the defendants had of the substantial risk to the inmate. That is totally missing in your pleadings. Sure, Your Honor. With regard to your first point, in this context we're dealing with a federal prison. This is not... We're not dealing with even a multinational corporation where an investigator, like you are, has the possibility. We're dealing with a federal prison here. There's never a whistleblower in a federal prison? Well, I'm not aware of any at MCC dealing with our issues, certainly. The only real available information that we've got for the complaint is based on two sources. One is the Bureau of Prisons website on MCC, which contains exactly one factual allegation that population 1,000. That's all it says. And then based on my own experience in the MCC, I know that it's not a large facility. They only house inmates on six floors. I mean, that really is it. We've also got the rules of professional responsibility. We're not free to just go and start interviewing employees of the defendant about the facts in this case. With regard to your second... Have you made any requests of the government to be allowed to interview them? I have not, Your Honor. With regard to your second point in Redmond, it's a very different case at that point. As opposing counsel pointed out, that was a motion. The court was dealing with a directed verdict in that case. They'd been through discovery. They'd been through a trial in that case. So the record was much more developed than we have at this point. But taking that into consideration, really, fundamentally what the government is asking to do in this case, they're making a policy argument. They're asking to extend ICPOL from the context that it was there. You had an unconstitutional discrimination in federal policing practices to a pretrial detainee conditions of confinement case. And really, by raising the pleading standard so high, you would essentially be eliminating Bivens' claims in these situations. A warden of a prison could never be sued. You're just never going to be able to reach that level of pleading. But you don't allege that the warden and the assistant warden knew that Ford existed, knew that Ford had been convicted. You don't even allege what he was convicted of. I'm not so sure he was convicted of anything. So you have to show for deliberate indifference that the Bivens defendant has subjective knowledge of the substantial risk of harm to the plaintiff and through deliberate indifference ignores it. So you haven't alleged that these defendants had knowledge of any of the facts that you say make Ford a dangerous individual. Sure, Your Honor. And with all due respect, I disagree. I believe we have alleged that. Where? Tell me in your complaint where you've alleged that any of the defendants have knowledge of the substantial risk of Ford to the plaintiff. And Your Honor, is the court referring to the opposing counsel's argument that? I'm referring to your complaint. Well, each specific paragraph of the complaint must specify which defendants we're talking about in that paragraph. Because if I could direct the court to paragraph 13 areola. The warden is the chief executive officer and is responsible for the total operation of the facility. But you don't allege that areola knew that Ford, a convict of a violent crime, was housed with MG. Your Honor, we allege that the warden areola and the associate warden of operations Garcia, they were responsible not only for the day to day operation. That's a conclusion. Well, it's a conclusion. It's all that's available at this point. I think. But how does responsible for the day to day operations mean that they had knowledge of this particular assignment? Well, I think that goes to what Mr. Ford, the assailant in this case, was being held on. He was being held federally on charges of armed carjacking. He was also facing trial on state court charges for kidnapping and the attempted murder of not one police officer but two. So that's the kind of thing that we pay associate wardens of facilities like this to be aware of. Those type of individuals that are willing to commit those type of acts of violence against law enforcement officers certainly are the kind of individuals that are willing to do that in a custodial setting. That's the type of notice. Have you have you alleged any regulation or procedure by which the warden is notified of the individuals who are in his custody and the record that they have? Well, we have and we have not, Your Honor. So on the first part, we have alleged that that Warden Areola and Associate Warden Garcia were aware of legislation such as PREA, the prison remuneration. But did you allege that they knew that Ford was even in the facility? Yeah, well, that is what we've alleged, Your Honor. Where? To the second point, if you go to... Where did you allege that they knew, A, that Ford was housed at MCC, B, that Ford had been convicted of a violent offense, and C, that he had been held on other charges involving... Aircraft 38, Your Honor. Subsection A through subsection E. Defendants were on notice notice as to the overcrowding and increased violence in the facilities. Defendants had a duty to take all reasonably... That doesn't allege that these two men knew of these facts. It says defendants were on notice of the following facts. Were on notice. Yes, Your Honor. How can we infer, from what can we infer that they had subjective knowledge of this? Well, I can tell you, Your Honor, from a practical standpoint in handling these cases, one of the first things we do in discovery is we ask those questions. Opposing counsel made a lot to do about us not making any allegations about policies or procedures. That's 15 interrogatories about what were the relevant policies and procedures in this case. That's step one in discovery. Unfortunately, the Bureau of Prisons, they don't make this stuff available. You can't go to their website and search it. You got to get that through discovery. And we've alleged, based on this individual being there, they were on notice that they had a individual inclined to commit... What gave them notice? The charges he was being held on. How did they know what charges he was being held on? We don't have that exact piece, but that, I mean, it is their job to know, Your Honor. So we assume that they're going to know that. Does your client know the name of any guard who was guarding him directly? He does not, Your Honor. Could you have just alleged does? Could you have sued the United States on the tort claim and then just alleged does on the Bivens claims? I'm not aware of the answer to that, but I'd be happy to supplement that if the court would like. You do include does in this? We do include does, yes, Your Honor, with the idea of doing in those individuals once we got the names. But at this point, these are the only two names that we have. So I guess in some, Your Honors, making a policy decision like that, drastically curtailing Bivens claims in cases like this, when the legislature has acted on this, enacting PREA and steps like that, I think would be a big mistake. I think these are important claims, and it would be unjust to hold the line officers responsible in these cases when it is, in fact, the warden and the associate warden that are responsible for operations that set the policy and that train these individuals. So for those reasons, we'd ask the court affirm the district court's ruling in this instance. Thank you very much. Can I ask a question, though? I pressed counsel for the government on this. Are you aware of... You didn't have to ask leave to amend in this case because you prevailed in the district court. The government's representing that it's not a dismissal with prejudice they're asking for. You have an ongoing FTCA claim. Do you expect that in the course of pursuing that aspect of your case, you could develop the discovery that would answer Judge Bea's specific questions? Yes, Your Honor. If so, will the procedures in the district court, as far as you're aware, allow you to revive your Bivens claim if you develop information through discovery? That's a good point, Your Honor. Theoretically, that is possible. I know in practice, in the cases that I've personally handled, leave is supposed to be freely granted. But in practice, it doesn't necessarily happen that way because a lot of times, you do your written discovery up front, then you follow up with the depositions, and after that, any more written discovery that's required. At that point, you're very late in the game. So to go before the district court requesting leave to amend, to add a completely different cause of action, would then require more discovery on that cause of action. It wouldn't be adding a different cause of action in this case. She's already ruled in your favor that you stated a plausible claim where if we were to agree with the government that under Starr and Iqbal, it's not yet sufficient, then I'd take it that the district court could hold the claimant in abeyance. I'm not aware that that is possible. If procedurally that is possible, I think that would be a good result, Your Honor. But I'm not aware that that is. Thank you very much. The case of MG versus Samuels is submitted, and we thank you for your argument.
judges: Fisher, Bea, Friedland